## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JONATHAN GILKESON, #419-774            *

Plaintiff                              *

v                                      *        Civil Action No. PX-16-3715

DR. COLIN OTTEY,                       *
RNP JEANETTE CLARK,
RNP KRISTA BILAK,                      *
DR MAHBOOB ASHRAF,[1]
NURSE RICKY,[2]                        *
NURSE DAWN HAWK,
WEXFORD HEALTH SOURCES, INC.,
                                       *
Defendants
                                      ***

## <u>MEMORANDUM OPINION</u>

Jonathan Gilkeson is an inmate at North Branch Correctional Institution ("NBCI") and in

the custody of the Maryland Department of Public Safety and Correctional Services.  Pending

before the Court is Gilkeson's verified Complaint pursuant to 42 U.S.C. § 1983, alleging that

Defendants provided him constitutionally inadequate medical care in violation of his Eighth

Amendment right to be free from cruel and unusual punishment.  ECF No. 1.  Defendants

Wexford Health Sources, Inc., ("Wexford"), Colin Ottey, M.D., Janette Clarke, N.P., Krista

Bilak, N.P., Mahboob Ashraf, M.D., and Dawn Hawk, R.N. (collectively, the "Medical

Defendants'), moved to dismiss the Complaint, or alternatively, for summary judgment to be

granted in their favor. (ECF No. 22). Gilkeson has opposed the motion, (ECF No. 28) to which

the Medical Defendants replied.  (ECF No. 29).

---

[1]  Gilkeson has misspelled Defendant's name. The docket shall be corrected to reflect Defendant's name is Ashraf
Mahboob, M.D.

[2] Service was not obtained on "Nurse Ricky."  This Defendant will be dismissed without prejudice.

The matter is briefed and the Court finds a hearing unnecessary. Local Rule 105.6 (D. Md. 2016). As explained below, Defendants' Motion (ECF No. 22) IS GRANTED IN PART and DENIED IN PART.

I.    **Background**

Prior to his incarceration in 2012, Gilkeson had been admitted to the University of Maryland Medical System for a possible deep vein thrombosis (DVT) and right groin pain arising from his having injected heroin into his femoral vein, which caused an abscess and cellulitis. ECF No. 1 ¶15. Gilkeson was treated with antibiotics, his scrotum was reconstructed, and his right testicle was moved to his upper right thigh. According to the University of Maryland medical records, this transplant was intended to be permanent. Medical Records, ECF 24 at 20.

Gilkeson thereafter was incarcerated intermittently and without medical incident.[3] However, on May 22, 2014, while housed at Jessup Correctional Institution (JCI), Gilkeson first complained of groin pain, noting that his prescription for Naproxen was not controlling the pain adequately. Barerra Affidavit, ECF 22-5 ¶8.[4] Because Gilkeson has suffered from longterm and extensive intravenous heroin and opioid abuse, Gilkeson was prescribed narcotics for pain as a last resort. Barrera Affidavit, ECF No. 22-5 ¶5.

On June 3, 2014, Gilkeson was seen at JCI by John Moss, P.A. complaining of groin pain. Moss changed Gilkeson's medicine to Indomethacin. Medical Records No. ECF 24 at ¶14-15. On June 17, 2014, Moss saw Gilkeson again for complaints of groin pain, at which time

---

[3] Defendants include Gilkeson's medical records from May of 2013 to January 24, 2017, and an affidavit executed by Robustiano Barrera, M.D., Medical Director of NBCI. ECF No. 22-5, Medical Records, ECF No. 24. The Court relies on those records, as well as Gilkeson's averments, in assessing the propriety of summary judgment.

[4] In his Opposition, Gilkeson disputes Defendants' Motion to place his records under seal (ECF No. 28) and Defendants have withdrawn their motion to seal. ECF No. 29. Accordingly, the Court shall rescind the Order placing the medical records under seal.

Moss referred Gilkeson for follow-up medical evaluation and treatment. *Id.* at 16-17.

On June 25, 2014, Dr. Syed Rizvi examined Gilkeson. Gilkeson reported to Dr. Rizvi that when not incarcerated, Gilkeson had taken Percocet for his pain. Dr. Rizvi prescribed Percocet for Gilkeson. ECF No. 22-5 at at ¶11. Dr. Rizvi saw Gilkeson again on August 13, 2014; Gilkeson reported "excruciating" groin pain from having been kicked in the testicle and that his current pain medications were ineffective. Dr. Rizvi referred Gilkeson for a follow-up urology consult and continued Gilkeson on his pain medication. *Id.* at ¶12-13.

On October 21, 2014, Gilkeson was seen by a urologist at the University of Maryland. As recommended, Gilkeson underwent an ultrasound to assess possible relocation of the right testicle into the scrotum. The consultation report noted that relocation of the testicle in the scrotum to be a possibility, although also noted that the surger may not necessarily alleviate Gilkeson's pain. *Id*. at 14.

On November 13, 2014, Gilkeson underwent an ultrasound at Bon Secours Hospital, the record for which notes that Gilkeson had previously undergone "***temporary*** transplantation of the right testicle into the upper thigh" to treat his infection. *Id*. at 26. (Emphasis added). The ultrasound confirmed that both testes showed normal vascular flow and no acute findings were observed. *Id*.

On December 3, 2014, Gilkeson was transferred to RCI where he could not receive Percocet until he was examined by an on-site physician. Gilkeson instead was first given Tylenol #35 and then Tramadol. Id.; see also Barerra Affidavit, ECF 22¶17. On December 11, 2014, Gilkeson was referred for another urology consult. Medical Records, ECF No. 24 at 33-34. On December 22, 2014, Gilkeson was transferred from RCI to NBCI, and examined shortly

---

[5] Tylenol #3 is acetaminophen (Tylenol) and codeine, a narcotic prescription pain medicine for pain relief. *See* https://medlineplus.gov/druginfo/meds/a601005.html (last visited January 9, 2018).

thereafter by Janette Clark, N.P. in the facility's Chronic Care Clinic. There, Gilkeson reported right groin pain and asked that his right testicle be replaced to his scrotum. Medical Record, ECF No. 24 at 36. Gilkeson Tramadol prescription was continued for sixty days. Medical Records, ECF No. 24 at 31, 42.

On February 15, 2015, Monica Wilt, R.N. saw Gilkeson for his groin pain, during which time Gilkeson reported that he was still having pain while taking the Tramadol and Ibuprofen. Contemporaneous notes reflect that Gilkeson had undergone a follow up ultrasound, but no other procedures had been scheduled. ECF No. 24 at 45.

On March 13, 2015, Gilkeson again reported to nurse Clark that he was suffering groin pain and again expressed his desire to have his right testicle returned to his scrotum. Clark discussed Gilkeson's request with the Regional Medical Director.[6] Ultimately Gilkeson's request for surgery was declined because Gilkeson was able to complete all activities of daily living without it. Clark also switched pain medications for Gilkeson instructed him to return if he continued to experience pain without improvement. *Id.* at 49-52.

On March 23, 2015, Mahboob Ashraf, M.D. saw Gilkeson in the Chronic Care Clinic, and Gilkeson did not complain of groin pain.[7] Ashraf prescribed Tramadol in addition to Gabapentin. *Id.* at 53, 58. On March 31, 2015, Gilkeson again requested that his testicle be returned to his scrotum. Dr. Ashraf ordered a surgical consultation for Gilkeson which was ultimately approved. *Id.* at 59-60, 62, 64. On July 13, 2015, Gilkeson returned from an offsite medical visit related to his hepatitis C and told Ricki Moyer, R.N. that he was going to refuse

---

[6] It appears that Defendant Colin Ottey was the Regional Medical Director at that time. Medical Records, ECF No. 24 at 79. Defendants shall be required to provide the name of the Regional Medical Director during the time relevant to this case.

[7] Gilkeson has a history of Hepatitis C (HCV). Medical Records, ECF No. 24 at 53, 65.

further treatment. *Id*. at 68. Dr. Ashraf's notes suggest that Gilkeson did receive a urological consult, although it is unclear whether the consult was in person. Dr. Ashraf reports that Gilkeson "was seen by urologist who discussed the case with patient concerning the repositioning of the testicle," and that Gilkeson was told that although the surgery is possible, it may also lead to vascular compromise. *Id.* at 71.

Gilkeson was then seen on September 8, 2015, by Krista Swan, N.P. who discontinued Gilkeson's Tramadol in light of his history of opiate abuse and renewed the Gabapentin. *Id.* at 76. Gilkeson also requested a consult with the University of Maryland Medical Center where the initial surgery had been performed. *Id.* 73. Swan referred Gilkeson to the Regional Medical Director. *Id.*

On October 10, 2015, Gilkeson asked Ricky Moyer, R.N., to place him back on Tramadol, which Moyer declined to do. Moyer also advised Gilkeson of his upcoming meeting with the Regional Medical Director. *Id.* at 77. On October 13, 2015, Regional Medical Director, Colin Ottey, met with Gilkeson and discussed surgery to return Gilkeson's testicle to his scrotum. The meeting concluded with Ottey advising Gilkeson that he (Ottey) would review the medical records regarding the propriety of Gilkeson's request. *Id.* at 79.

On October 20, 2015 Gilkeson again saw Krista Swan, N.P. for complaints of groin pain. Swan prescribed Tramadol pending Dr. Ottey's review of the case. *Id.* at 81. On January 20, 2016, Gilkeson reported to Dr. Ashraf that his medicine regimen was adequately controlling his pain, save for at night when he experienced increased discomfort. Ashraf prescribed Mobic[8] to be taken at night before bed and continued Gilkeson's Tramadol prescription for ninety days. *Id.* at 87, 89.

---

[8] Mobic is the brand name for meloxicam, a medication used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis. *See* https://medlineplus.gov/druginfo/meds/a601242.html (last visited January 10, 2018).

On April 26, 2016, Gilkeson again complained of stomach and groin pain during a medical visit with Michael Kleptich, R.N. *Id.* at 91. The following day, April 27, 2016, Dawn Hawk, R.N. examined Gilkeson, noting that Gilkeson was moving during the examination without difficulty. Hawk denied Gilkeson's request for more pain medication, which provoked an angry response from Gilkeson. *Id.* at 93.

Gilkeson once again requested pain medication on May 2, 2016 during a medical visit with Dr. Ashraf. Dr. Ashraf declined the request, agreed to a final sixty day prescription, but forewarned Gilkeson that his prescription will not be further renewed, especially in light of Gilkeson's substance abuse history. *Id.* at 94-96.

Gilkeson expressed no complaints of pain until July 6, 2016, when he asked to renew his Tramadol prescription. At that medical visit, Nurse Ricki Moyer noted that Gilkeson was moving well. Gilkeson told Nurse Ricki Moyer that he needed Tramadol to "live normally." When Moyer asked what he was unable to do without Tramadol, Gilkeson responded that he was unable to play basketball. Gilkeson became angry when Moyer advised him that his last Tramadol prescription had been renewed for a final sixty days. *Id.* at 97.

On July 28, 2016, Gilkeson's Mobic prescription expired. He was on no prescription pain medications after this time. Barrera Affidavit, ECF No. 22-5 ¶45. Gilkeson did not present any complaints of groin pain thereafter until August 31, 2016, when he reported to Marilyn Evans, R.N. that he was hit in the right thigh during unspecified activity. He described feeling shooting pain in his groin. He was referred to a medical provider for evaluation and treatment. Medical Records, ECF No. 24 at 107.

On September 8, 2016, Gilkeson told Krista Bilak, N.P. that during an altercation, he was hit in the inner thigh where his right testicle was located. He complained of sharp intermittent

pain with a tingling sensation. Bilak observed the area was red, swollen and tender. Gilkeson

stated he wanted his testicle removed.  Bilak prescribed Gabapentin for pain, an antibiotic for

possible infection, and requested a surgical consult. Bilak also instructed Gilkeson to return to

the medical unit if his symptoms failed to improve or worsened.  *Id*. at 109-111.

On September 15, 2016, Gilkeson was approved for a surgical evaluation. *Id*. at 112, 114.

On November 11, 2016, Bilak continued Gilkeson on Gabapentin for 120 days and notified him

of the approval.  On February 2, 2017, Gilkeson was approved for surgery on his testicle, but the

record is unclear whether Gilkeson underwent an operation.

Gilkeson claims in this action that the Defendants' unreasonable delay during his

incarceration in surgically returning the testicle to his scrotum led to the testicle having to be

removed altogether. *Id*. ¶29.  Gilkeson also asserts that during this surgery and recovery,

Defendants failed to provide adequate pain medication, and that the removal of his testicle

renders him less likely to father a child. Gilkenson seeks monetary damages and declaratory

relief.  *Id.* ¶¶ 35-37.

### STANDARD OF REVIEW

#### I.      Motion to Dismiss

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of a complaint. When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-

pleaded allegations are accepted as true and the complaint is viewed in the light most favorable

to the plaintiff. Accordingly, a court "must accept as true all of the factual allegations contained

in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the

plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir.

2011); *see Hall v. DirectTV, LLC,* 846 F.3d 757, 765 (4th Cir. 2017). A pro se plaintiff's

pleadings are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see Alley v. Yadkin County Sheriff Dept.*, No. 17-1249, 698 F. App'x 141, 2017 WL 4415771 (4th Cir. Oct. 5, 2017). However, even a pro se litigant's complaint must be dismissed if it does not allege a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  A genuine issue of disputed material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must determine whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.

In this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.,* 718 F.3d at 312; *see also Scott v. Harris,* 550 U.S. 372, 378 (2007).  A court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore,* 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French,* 499 F.3d 345, 352 (4th Cir. 2007)).

This Court must also not allow factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must

be granted. *Anderson*, 477 U.S. at 249-50. A party opposing summary judgment must "do more

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express*

*Corp.,* 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party

cannot create a genuine dispute of material fact through mere speculation or compilation of

inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

This Court is mindful that Gilkeson proceeds pro se. A federal court must liberally

construe pro se pleadings to allow the development of potentially meritorious cases. *See*

*Erickson*, 551 U.S. at 94; *Cruz v, Beto*, 405 U.S. 319 (1972). Liberal construction does not

mean, however, that this Court can ignore a clear failure in the pleadings to allege facts sufficient

to state a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990).

Put succinctly, a court cannot assume a genuine issue of material fact where none exists.

Fed.R.Civ.P. 56(c).

## DISCUSSION

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue

of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173

(1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized

by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th

Cir. 2003), citing *Wilson v. Setter*, 501 U.S. 294, 297 (1991). To state an Eighth Amendment

claim for denial of medical care, a plaintiff must demonstrate that defendants' acts or omissions

amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429

U.S. 97, 106 (1976); *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate

indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was

suffering from a serious medical need and that, subjectively, the prison staff was aware of the

need for medical attention but failed to either provide it or ensure the needed care was available.

*See Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

A "serious medical need is one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity

for a doctor's attention." *Iko,* 535 F.3d at 241 (internal quotation marks and ellipses omitted).

Proof of an objectively serious medical condition, however, does not end the inquiry. The

subjective component requires "subjective recklessness" in the face of the serious medical

condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of

the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*,

129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the

alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison

officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v.*

*Virginia Beach Correctional Center,* 58 F. 3d 101, 105 (4th Cir. 1995), (quoting *Farmer*, 511

U.S. at 844).

If the requisite subjective knowledge is established, an official may avoid liability "if [he]

responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S.

at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant

actually knew at the time. *Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2000); *see also Jackson*

*v. Lightsey*, 775 F.3d 170, 179 (4th Cir. 2014). An inmate does not have a constitutional right

treatment of choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Moreover, an inmate's

disagreements with medical staff over the necessity for or extent of medical treatment do not rise

to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849

(4th Cir. 1985); *see also Fleming v. LeFevere,* 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

Further, "any negligence or malpractice on the part of ... doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). In essence, the treatment rendered must be as grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted) (overruled in part on other grounds by *Farmer*, 511 U.S. at 837; aff'd in pertinent part by *Sharpe v. S.C. Dep't of Corr.,* 621 F. App'x 732 (Mem) (4th Cir. 2015)). Finally, adequacy of treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

## I.      Claims Against Wexford

Wexford, a private contractor which provides health care at correctional facilities, argues that dismissal is warranted because the doctrine of respondeat superior does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Generally, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is premised solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc*., 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co*., 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Md. Dep't of Pub. Safety & Corr. Servs*., 316 F. App'x 279, 282 (4th Cir. 2009). To the extent that Gilkeson seeks to hold Wexford liable based on supervisor liability, he fails to aver plausibly facts demonstrating that Wexford is a state actor whose policies, customs, or practices led to violations of Gilkeson's constitutional rights. *See Monell v. N.Y. City Dep't of Social Servs.,* 436 U.S. 658,

690 (1978). Therefore, the claims against Wexford will be dismissed. *See Love-Lane*, 355 F.3d at 782.

  **II.**  **Claims Against Ottey, Clark, Bilak, Ashraf, and Hawk**

  **A. Pain Medication**

  Gilkeson faults Defendants for providing ineffective pain management and discontinuing his pain medication. When viewing the record in the light most favorably to Gilkeson, no reasonable trier of fact could agree that Gilkeson's medical treatment constitutes an Eight Amendment violation. Gilkeson received regular medical care and adequate pain management. Further, no evidence suggests that medical providers failed to proscribe medically appropriate pain relievers as needed. Gilkeson's contemporaneous objections to defendants' occasional refusal of pain medication, especially in light of Gilkeson's history of drug abuse which contraindicates prescribing painkillers, amount to no more than a disagreement over the proper course of care. It does not as a matter of law rise to the level of an Eighth Amendment violation. *See Estelle*, 419 U.S. at 105–06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985). Accordingly, the Court grants summary judgment in favor of Defendants Ottey, Clark, Bilak, Ashraf, and Hawk.

  **B. Delay of Gilkeson's surgery**

  Defendants' collective action (or inaction) surrounding the more than two year delay in approving Gilkeson's surgery is a different matter. Gilkeson contends that his surgery was always medically necessary, a claim which is supported in some measure by the medical records. *See* Medical Records ECF No. 24 at 26 (Bon Secours Ultra Sound Report indicating a temporary transplantation of the scrotum). However, at other points, the medical records suggest that the transplant of Gilkeson's testicle to his thigh was permanent and not to be reversed by a future

medical procedure. Medical Records, ECF No. 24 at 20 (noting permanent transplant of right testicle into thigh); Barrera Affidavit, ECF No. 22-5 ¶5 (stating placement of the teste in the thigh was not a temporary measure).[9]

Of additional concern is Dr. Barrera's summary conclusion that medical personel, including the then Regional Medical Director, determined on March 13, 2015 that surgery was not indicated because Gilkeson was able to complete "all activities of daily living."  Barrera Affidavit, ECF No 22-5 ¶24.  Nowhere do the medical records identify the activities of daily living to which Barrera refers.  Nor is it at all clear exactly what activities of daily living are medically pertinent to determining whether surgery was warranted.  This gap in Defendants' proffered medical assessment is especially concerning in light of Gilkeson's repeated complaints of pain for the nearly two years during which such assessments were underway.  The Court's concern is compounded by Gilkeson ultimately being approved for surgery to remove the testicle some four years after the initial surgery was performed in 2012. Accordingly, genuine issues of material fact remain as to whether Gilkeson was denied timely surgery for a serious medical condition.

As to whether Defendants acted with deliberate indifference to his serious medical needs, additional outstanding questions of fact remain. Specifically, was the initial relocation of the right testicle in 2011 meant to be permanent or temporary; was Gilkeson scheduled for repositioning surgery during the time he was at JCI; was Gilkeson denied surgical repositioning because it was deemed cosmetic and; if necessary surgery was delayed or denied, whether Defendants acted with deliberate indifference to his serious medical needs.

---

[9] Gilkeson further claims that he was denied the surgery because it was deemed cosmetic and that a physician at the Maryland Correctional Institution-Hagerstown informed him that "nowhere on the planet" would the procedure be considered cosmetic and the time had long passed to save the testicle. Complaint, ECF No. 1 ¶¶ 25, 28.

Where, as here, the parties offer differing versions of the events in sworn affidavits or pleadings as to genuine issues of material fact, summary judgment is precluded.  Accordingly, as to Defendants Ottey, Clark, Bilak, Ashraf, and Hawk, their motion is denied.  By separate Order, the Court will appoint *pro bono* counsel to represent Mr. Gilkeson, and thereafter a discovery scheduling order shall issue.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss or, in the Alternative for Summary Judgment IS GRANTED IN PART AND DENIED IN PART.  A separate Order follows.

  2/7/18
Date

                              /S/
                    Paula Xinis
                    United States District Judge